## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 20-22694-Civ-WILLIAMS/TORRES

ROBERTO PAGUAGA,

      *Plaintiff*,

v.

PINNACLE ONE PRICE DRY
CLEANING OF DAVIE, LLC d/b/a
PINNACLE CLEANERS, *et al.*,

      *Defendants.*

_____/


### ORDER ON PLAINTIFF'S MOTIONS FOR FEES AND COSTS

This matter is before the Court on Roberto Paguaga's ("Plaintiff") motions for attorney's fees and costs against Pinnacle Cleaners ("Pinnacle"), Eric Draudt, and Galina Draudt (collectively, "Defendants"). [D.E. 127; 128]. Defendants responded to Plaintiff's motions on April 12, 2022, [D.E. 129; 130], to which Plaintiff replied on April 18 and 19, 2022. [D.E. 131; 132]. Therefore, Plaintiff's motions are now ripe for disposition. After careful review of the motion, response, reply, relevant authority, and for the reasons discussed below, Plaintiff's motions are **GRANTED in part** and **DENIED in part**.[1]

_____

[1] On June 2, 2022, the Honorable Kathleen M. Williams referred Plaintiff's motions for fees and costs to the Undersigned Magistrate Judge for disposition. [D.E. 133].

1

## I.  BACKGROUND

Plaintiff filed this action on June 30, 2020, asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206(a) and 207(a), arising from alleged unpaid overtime wages and retaliatory actions by Defendants.   [D.E. 1; 26]. Plaintiff claimed that he worked for Defendants at Pinnacle, a dry-cleaning services provider, from approximately June 2015 to August 9, 2019, and that, during this time, Defendants failed to compensate him for his overtime hours in breach of the FLSA.   Specifically, Plaintiff alleged that his employment agreement with Defendants provided that he would be compensated at a rate of $18.17 per hour on a 40-hour work week, plus any applicable overtime.  However, Defendants failed to pay him any overtime wages despite the fact that Plaintiff consistently worked from 3 to 14 hours of overtime per week throughout his time at Pinnacle.  Plaintiff also alleged that he was ultimately fired from his job because he complaint to the Draudts about his improper compensation.  Accordingly, Plaintiff sought to recover damages for unpaid overtime wages and retaliation from Defendants.

On July 26, 2021, the parties proceeded to a five-day jury trial where the jury found that Defendants failed to pay Plaintiff his overtime wages as required under the FLSA.  The jury delivered a verdict that was partially favorable to the Plaintiff, finding that Defendants were not guilty of retaliation but concluding that Defendants owed Plaintiff $3,318.75 for unpaid overtime wages from June 30, 2018, to June 30, 2020.  [D.E. 104].  On February 2, 2022, the Court entered an order denying Defendants' motion for judgment notwithstanding the verdict and granting

Plaintiff's motion for entry of final judgment.  [D.E. 120].  The Court then entered judgment in Plaintiff's favor for a total sum of $6637.50, which included $3,318.75 in liquidated damages.  [D.E. 122].  The Court also determined that Plaintiff was the prevailing party with respect to the FLSA overtime claim only and reserved ruling on Plaintiff's motion for reasonable attorney's fees and costs.  [D.E. 120; 122].

## II.  ANALYSIS

Plaintiff's motion seeks $107,270 in attorney's fees and $12,556.09 in costs. Defendants oppose the motion and take issue with Plaintiff's fees and costs calculations because, in their view, (i) Mr. Duran's $425 hourly rate is not consistent with the prevailing market rate that applies to lawyers with his level of FLSA practice experience; (ii) his lack of experience trying FLSA cases protracted the proceedings and multiplied Plaintiff's litigation fees; (iii) Mr. Duran's lodestar amount should be subject to a 50% across-the-board reduction because Plaintiff only prevail on his overtime claim;[2] and (iv) several of the items in Plaintiff's bill of costs should be deducted (including deposition, interpreter, and expedited fees) because they were excessive and unnecessary.  [D.E. 129; 130].  As such, Defendants request that the Court reduce Plaintiff's fees and costs to a more reasonable amount.

We will turn first to the motion for costs and then address the parties' disputes with respect to the motion for attorneys' fees.

---

[2] Alternatively, Defendants seek an hour-by-hour reduction of certain entries due to their clerical and nonrecoverable nature.

A.   *Plaintiff's Motion for Costs³*

Under Fed. R. Civ. P. 54(d)(1), a prevailing party is entitled to recover costs as a matter of course unless directed otherwise by a court or statute.   A strong presumption exists in favor of awarding costs.   *Id.*   A court may tax as costs those expenses enumerated in 28 U.S.C. § 1920.⁴   *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) (absent explicit statutory or contractual authorization, federal courts are bound by the limitations set out in § 1920).   "To defeat the presumption and deny full costs, a district court must have a sound basis for doing so."   *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000).   The court should not take into consideration the relative wealth of the parties, as it would undermine the presumption that Rule 54(d)(1) creates in favor of the prevailing parties.   *Id.*

Upon the filing of a timely motion or bill of costs, which sets forth in detail the amounts requested, the opposing party has the burden of showing that the

---

³ As a preliminary matter, we note that, contrary to Defendants' claim, Plaintiff's motion seeks to recover *both* attorney's fees and costs: "Plaintiff also seeks to recover his taxable costs incurred in this case . . . pursuant to 28 U.S.C. § 1920." [D.E. 127 ¶ 11].

⁴ The following costs are permitted under 28 U.S.C. § 1920:
    (1)   Fees of the clerk and marshal;
    (2)   Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
    (3)   Fees and disbursements for printing and witnesses;
    (4)   Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
    (5)   Docket fees under section 1923 of this title;
    (6)   Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

requested costs fall outside the scope of this statute or are otherwise unreasonable. *See, e.g., E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000) (affirming denial of motion for certain costs that were not timely objected to before the district court because the "[f]ailure to raise an issue, objection or theory of relief in the first instance to the trial court generally is fatal"; "[this Rule applies] to a party's failure to object to witness fees") (citations omitted); *Katz v. Chevaldina,* 127 F. Supp. 3d 1285, 1292 (S.D. Fla. 2015) (the burden lies with the challenging party to show that deposition costs not recoverable as unrelated or unnecessary to any issue in the case).

Here, Plaintiff requests $12,556.09 in costs under § 1920.  These costs are comprised of the following items: $400 in filing fees, $1,390 in service of summons and subpoenas costs, $6,102.41 in deposition court reporting and transcripts costs, $1,308.68 in printing expenses, and $3,355 in interpreter costs.  [D.E. 128 at 3]. Defendants challenge these costs, taking specific aim at (i) several of the costs associated with the serving of subpoenas on an expedited basis; (ii) the costs of serving subpoenas on witnesses who were not called to testify at trial; (iii) the costs incurred deposing witnesses whose testimony was not necessary; and (iv) the costs of printing and supplies for trial.  [D.E. 130 at 2–4].

### *(1)    Service of Process and Expedited Fees*

Starting with Defendants' objections to the costs attributed to service of deposition and trial-related subpoenas, we find that some of Defendants' points have merit.  "Pursuant to [Section] 1920(1), fees of the clerk and marshal may be

taxed as costs. This includes service of process costs." *James v. Wash Depot Holdings, Inc.*, 242 F.R.D. 645, 649 (S.D. Fla. 2007) (alteration and internal quotations marks omitted) (citing *EEOC v. W & O Inc.*, 213 F.3d at 623). "The Eleventh Circuit has held that private process server fees may be taxed under [S]ections 1920(1) and 1921, so long as the taxable costs of the private process server are limited to the statutory fees authorized by [S]ection 1921." *Flagstar Bank, FSB v. Hochstadt*, 2010 WL 1226112, at *9 (S.D. Fla. 2010) (footnote omitted) (citing *W & O Inc.*, 213 F.3d at 624). "This is currently $65 per person per hour for each item served, plus travel costs and any other out-of-pocket expenses." *Cont'l 332 Fund, LLC v. Hilz*, 2020 WL 6595061, at *3 (M.D. Fla. 2020) (citing 28 C.F.R. § 0.114(a)(3)). "[I]nvoices submitted to substantiate these expenses must 'provide sufficient or intelligible details as to what exactly was paid for.'" *Mid-Continent Cas. Co. v. JWN Constr., Inc.*, 2019 WL 8402872, at *3 (S.D. Fla. 2019) (alteration omitted) (quoting Cortez v. Tom Thumb Food Stores, Inc., 2013 WL 12383258, at *4 (S.D. Fla. 2013)).

We agree with Defendants that the costs attributed to expedited, duplicative, or unduly costly service of subpoenas are excessive and warrant exclusion. "Service of process costs are included under § 1920, . . . but where a party seeks costs for multiple service attempts, the party must provide evidence justifying the need for multiple service attempts." *Ramos v. Arba Constr. Inc.*, No. 20-25192-CIV, 2021 WL 4482659, at *3 (S.D. Fla. Aug. 25, 2021), *report and recommendation adopted*, No. 20-25192-CV, 2021 WL 4480169 (S.D. Fla. Sept. 30, 2021). Here, Plaintiff fails

to provide any evidence justifying the $200 fees incurred in performing multiple service attempts on both Mariana Mendez and Marilyn Williams. [D.E. 128 at 17–18, 27–28]. As Defendants point out, it seems to make little sense for the server of process to have waited until the second attempt to serve Plaintiff's co-workers at the one place where everyone knew they could be found for certain, at their workplace. Second, the bill of costs lists a $50 duplicative fee for service of summons on Eric Draudt, who was simultaneously served with another summons by the same server at the same exact place and time. *Id*. at 8–9. These unexplained and duplicative costs are unjustified.

Plaintiff also seeks $250 in costs associated with service of subpoenas on a "priority" or "rush" basis but fails to justify the need for incurring these premium costs, *id*. at 11, 25, as well as fees for the production of deposition transcripts on an expedited basis amounting to $823.5. *Id*. at 31, 33–34. Because unjustified expedited costs are not recoverable, these charges are properly excluded. *See Osorio v. Dole Food Co.*, No. 07-22693-CIV, 2010 WL 3212065, at *11 (S.D. Fla. July 7, 2010), *report and recommendation adopted sub nom*. Osorio v. Dole Food Co., No. 07-22693-CIV, 2010 WL 3212062 (S.D. Fla. Aug. 12, 2010) ("The undersigned agrees . . . that the 'rush[]' . . . fees are not recoverable."). Plaintiff's service costs, thus, must be reduced by $1,323.5.

We find that the remainder of Plaintiff's service of subpoena costs are recoverable under § 1920. Defendants argue that this Court should strike all service (or deposition) costs except for those associated with witnesses who testified

at trial, but we are not persuaded by Defendants' unsupported proposition.  Indeed, this line of argument has been previously repeatedly rejected by our Court.  *See*, *e.g.*, *Mendez v. Integrated Tech Grp., LLC*, No. 18-22059-CIV, 2020 WL 6826355, at *4 (S.D. Fla. Nov. 20, 2020) ("Defendant raises issue with the costs incurred for the transcripts of [witnesses] because they did not testify at trial, but Plaintiff's election not to call these witnesses at trial does not, standing alone, demonstrate that it was not necessary to depose them. . . . [T]he Court will consider all listed transcripts as [covered by § 1920].")؛ *Barrera v. Weiss & Woolrich S.*, 900 F. Supp. 2d 1328, 1333 (S.D. Fla. 2012) ("The Undersigned agrees that Defendants have the latitude to subpoena witnesses and subsequently decline to call them at trial. Therefore, the Undersigned recommends that costs be awarded to Defendants for these subpoenas").

Here, it is undisputed that all the individuals in question were either co-workers of Plaintiff or had relevant information regarding Plaintiff's duties and responsibilities at Pinnacle.  Indeed, as Plaintiff points out, several of these depositions were animated in large part by the need to explore the factual and legal soundness of the several overtime exception defenses put forth by Defendants.  Thus, we find that these subpoenas and  depositions "were sufficiently related to the claims and issues in this case, even if many of the served individuals were not called to testify at trial," *Garcia v. J & J, Inc.*, No. 19-CV-60728, 2021 WL 633377, at *9 (S.D. Fla. Feb. 1, 2021), *report and recommendation adopted sub nom. Garcia*

*v. J&J, Inc.*, No. 19-CV-60728, 2021 WL 616529 (S.D. Fla. Feb. 17, 2021), and Plaintiff is entitled to recover their cost.

### (2)    *Translation and Copying Costs*

Plaintiff seeks $1,308.68 in costs associated with the copying of documents as well as purchase of supplies for trial.  Defendants' take issue primarily with the $344.29 and $864 fees associated with Plaintiff's printing of nine separate copies of the same 380-page exhibit binder.  We agree with Defendants that these expenses were unreasonable and excessive.  In his reply Plaintiff notes that these costs were incurred to create jury exhibit binders for each juror, but he fails to explain why this FLSA case with no unusual characteristics made it necessary to provide each single juror with a massive exhibit binder in the first place.  While providing every single juror with an exhibit binder may have aided Plaintiff's presentation of his theory of his case at trial, Plaintiff fails to meet his burden of showing that the costs stemming from this convenience were necessary for the prosecution of the case. Therefore, we agree with Defendants that it is not reasonable to expect them to pay for these extraordinary costs.

Turning to Defendants' objections to some of the costs associated with translation and interpretation services, we find that all these costs were reasonably necessary in the prosecution of Plaintiff's case and, as such, are recoverable under § 1920.  *See J & J, Inc.*, 2021 WL 633377 at *8 (where translation and interpreter services are necessary, "Plaintiffs should be reimbursed for these costs."); *Rodriguez*

*v. Marble Care Int'l, Inc.*, 862 F. Supp. 2d 1316, 1321 (S.D. Fla. 2012) (recommending approval of costs for interpreter used at plaintiffs' deposition).

In sum, having found that Plaintiff's costs should be reduced in the amount of $2,531.79, Plaintiff's motion for costs is **GRANTED in part** and **DENIED in part** for a total costs award of **$10,025.11**.

### B. *Plaintiff's Motion for Attorneys' Fees*

The next motion this Order addresses is Plaintiff's request for $107,270 in attorneys' fees. In determining an appropriate fee award, we employ the lodestar method. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) ("The 'lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee"). This method allows for a reasonable estimate of the value of an attorney's service because the movant submits evidence "supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433. If the movant's documentation of hours worked is inadequate, "the district court may reduce the award accordingly." *Id*.

The lodestar method requires the Court to first determine an attorney's reasonable hourly rate, and to multiply that rate by the number of hours reasonably expended. *See, e.g., Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Norman v. Housing Auth. Of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988); *see also Harbaugh v. Greslin,* 365 F. Supp. 2d 1274, 1279 (S.D. Fla. 2005). Following the Court's calculation, "the court must next consider the necessity of an

10

adjustment for results obtained." *Norman*, 836 F.2d at 1302.  Accordingly, when awarding fees, the Court must allow meaningful review of its decision and "articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Id.* at 1304 (citation omitted).

In awarding attorneys' fees, "courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *ACLU of Ga. v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999).  Courts, however, have considerable discretion when determining whether a party to a case should receive a fee award.  *See Cullens v. Georgia Dept. Of Transp.,* 29 F.3d 1489, 1492-1493 (11th Cir. 1994) (emphasizing that the district court is "empowered to exercise discretion in determining whether an award is to be made and if so its reasonableness.").

An award must be reasonable and must fall within the guidelines for fee awards promulgated by the Eleventh Circuit.  *See Norman*, 836 F.2d at 1299-1302. It is consequently within a court's ultimate discretion to adjust the fees to an amount it deems proper according to the Eleventh Circuit's parameters.  *See, e.g., Columbus Mills, Inc. v. Freeland,* 918 F.2d 1575, 1580 (11th Cir. 1990) ("[T]he *Norman* Court left to the discretion of the district court the decision of whether to prune excessive hours"); *Cullens,* 29 F.3d at 1492 ("[W]e reemphasize that the district court has discretion in determining the amount of a fee award.  This is appropriate in view of the district court's superior understanding of the litigation

and the desirability of avoiding frequent appellate review of what essentially are factual matters.") (quotation omitted).

### (1) *The Reasonable Hourly Rate*

The first step is to consider the reasonable hourly rate. This rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299). The relevant market is "the place where the case is filed." *ACLU,* 168 F.3d at 427 (internal quotation marks and citation omitted). Here, the relevant legal community is South Florida.

Several factors may be considered in arriving at that prevailing market rate, as set forth in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714, 717-719 (5th Cir. 1974). The movant is required to submit to the Court satisfactory evidence to establish that the requested rate accurately reflects the prevailing market rate. *See Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996); *Norman,* 836 F.2d at 1299 (finding that the burden lies with fee applicant "of producing satisfactory evidence that the requested rate is in line with prevailing market rates" and "satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."). Ultimately, the Court remains an expert on the issue of hourly rates in its community and may properly consider "its own knowledge and experience concerning reasonable and proper fees and may form an independent

judgment either with or without the aid of witnesses as to value." *Loranger,* 10 F.3d at 781 (quoting *Norman,* 836 F.2d at 1303).[5]

Here, Plaintiff requests an hourly rate of $425 for his counsel, Pelayo M. Duran a solo practitioner who has been admitted to the Florida Bar since 1998. [D.E. 127-1 ¶¶ 1–3]. Defendants vigorously dispute Plaintiff's requested fee as excessive and submit that such fee is far beyond what courts in Southern Florida award to lawyers with similar FLSA experience. According to Defendants, Mr. Duran's fee should be set at an hourly rate of $375, which more accurately reflects the prevailing rate in our market. [D.E. 129 at 3–4]. Among other things, Defendants include a signed affidavit by their lead counsel, Kimberly A. Gilmour, wherein Ms. Gilmour states that lawyers with arguably much more practical experience and FLSA expertise than Mr. Duran are regularly awarded no more than $375 in Southern Florida. [D.E. 129-2].

---

[5] The 12 *Johnson* factors are as follows:
    (1) the time and labor required;
    (2) the novelty and difficulty of the questions;
    (3) the skill requisite to perform the legal service properly;
    (4) the preclusion of other employment;
    (5) the customary fee;
    (6) whether the fee is fixed or contingent;
    (7) the time limitations imposed by the client or circumstances;
    (8) the amount involved and the results obtained;
    (9) the experience, reputation and ability of the attorneys;
    (10) the undesirability of the case;
    (11) the nature and length of the professional relationship with the client; and
    (12) the awards in similar cases.

*Johnson*, 488 F.2d at 717-719.

Exercising our own expertise in awarding attorney's fees in similar cases, together with a review of the record and supporting materials attached to the motion, we find that a $400 hourly rate is the most reasonable rate at this time for Plaintiff's counsel, Mr. Duran.    Although Mr. Duran asserts that he has handled "hundreds of discrimination-related cases, including many cases brought under the ADA and FLSA," [D.E. 127-1 ¶ 3], he does not dispute Defendants' points that this case represents Mr. Duran's first federal jury trial, and that his record on FLSA cases in federal court does not go beyond a handful of cases.  [D.E. 129 at 2–4]. Based on this alone, we find it actually justifiable to award Mr. Duran more than $375 per hour, an hourly rate that is "at the high end of the range of rates charged in the Southern District of Florida for . . . FLSA lawyers." *Echavarria v. Am. Valet Parking*, No. 14-80770-CIV, 2015 WL 12746113, at *2 (S.D. Fla. July 1, 2015).

On the other hand, given the passage of time since that 2015 case and the Court's knowledge of the movement of the market in our District, an adjusted amount of $400 per hour is the proper rate to award in this case for Mr. Duran's level of experience.

The cases that Plaintiff cites in support of his $425 fee request are certainly relevant but not dispositive.  As Defendants rightly point out, most of those cases were ADA cases with readily distinguishable facts.  For instance, *Ariza v. Untuckit* was a case that did not go to trial, it involved only a fraction of the hours involved here, and the defaulted defendants did not object to the amount of fees requested. Tellingly, in *Ariza* the court premised its award of $425 per hour on the fact that

"Plaintiff achieved the full measure of success sought" in that litigation, which made his litigation efforts fully "successful". *See Ariza v. Untuckit, LLC*, No. 19-CV-24291, 2020 WL 408241, at *2 (S.D. Fla. Jan. 24, 2020). Here, by contrast, it is undisputed that Mr. Duran did not "achieve the full measure of success" possible, as Plaintiff only prevailed in one of his two counts, his overtime rate was set at half-time rather than time-and-a-half, and he was only awarded $3318.75 of the $11,472.96 to $53,540.48 estimated range of due overtime articulated in Plaintiff's statement of claim. [D.E. 9; 104].

In sum, given counsel's level of FLSA experience and reputation in the community, the mixed results he obtained for his client here, and the lack of unusual characteristics and complexity in this standard FLSA overtime case, an hourly rate of $400, which is on the lower end of the spectrum for partner level work, is appropriate here. *See Nicaty v. Smarkusky*, No. 18-63113-CIV, 2019 WL 2568838, at *2 (S.D. Fla. June 14, 2019) (finding hourly rate of $425 excessive in FLSA case and reducing it to $375 per hour).

Defendant cites many examples of less-than-stellar performance by counsel during the trial, as well as the pretrial phase of the litigation. Counsel, for instance, filed a dubious motion for partial summary judgment, and even that motion required unnecessary judicial and attorney labor in responding to it. Additionally, Defendant points out various instances where counsel failed to fully comply with the Court's Rules during the litigation, which caused the same problem. But, even taking all these points into account, there are also many

positive contributions that counsel made during the case, not the least of which was ultimately trying the case to a federal jury and achieving a material result for the client.  Thus, on balance, counsel is entitled to a typical FLSA hourly rate for a partner at his level.  The $400 rate achieves that balance.

### *(2)      The Reasonable Number of Hours Expended*

The second step of the lodestar analysis requires the Court to determine the reasonable number of hours expended.  The award must exclude compensation for hours "that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, or experience of counsel.*"  *A.C.L.U. of Ga.*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301) (emphasis in original).  The fee applicant bears the burden of establishing that the time for which compensation is sought was reasonably expended on the litigation and must provide the Court with specific and detailed evidence that will allow for an accurate determination of the amount of fees to award.  *Id.*  If the fee applicant fails to exercise required billing judgment, the Court is obligated to "[prune] out those [hours] that are excessive, redundant, or otherwise unnecessary."  *Id.*  As in the analysis of reasonable hourly rates, the Court is presumed to be an expert in reviewing the number of hours expended on litigation for the purpose of attorney's fees. *Norman*, 836 F.2d at 1303.  Accordingly, it is "perfectly proper to award attorney's fees based solely on affidavits in the record."  *Id.* at 1303 (citing *Mesa Petroleum Co. v. Coniglio*, 629 F.2d 1022, 1030 (5th Cir. 1980)).

Here, Plaintiff seeks to recover fees for a total of 252.4 hours litigating this case. Plaintiff highlights that his calculation already accounts for a reduction of 51 hours that Plaintiff agreed to deduct following two meet and confers between the parties. Our review of the time records submitted in the record that evidence these reductions shows that they were, in fact, appropriate deductions and lessen the time that the Court had to take in reviewing all the time entries anew.

Yet, our review of the adjusted time records indicates that these time entires are still excessive in part given that this was a single-plaintiff case involving straightforward FLSA issues. Moreover, the time records submitted contain numerous entries that either bill excessively for the task at hand, reflect work done by Mr. Duran that could have been accomplished by paralegals, or fail to describe with sufficient particularity the activity billed for making it difficult to assess whether the activity was something that required the knowledge and experience of a lawyer.

For instance, time spent preparing and circulating zoom links, reviewing docket orders, placing telephone calls, and monitoring the filings on the docket, are the types of tasks that do not warrant a $400 rate. [D.E. 127-7 at 18, 29, 34]. Additionally, other categories of time included in the revised submission should also be excluded. Time taken to file a quite meritless motion for summary judgment will not be awarded. Not only was it meritless, but it was also procedurally defective in various ways, as the Court's Order on the motion points out. Thus, it is not reasonable to incur these additional hours of time for such a time-waster, which

counsel would have realized had he had more experience in this particular type of case. So, the time incurred in the filing and prosecution of the motion for summary judgment will also be excised as that time reaped no value to the overall outcome of the case.

At the same time, however, the time records also reveal a great deal of work pursuing relevant discovery, briefing necessary motions with the Court, developing the Plaintiff's case, and prosecuting the case at trial. That time is obviously compensable after the Court makes the appropriate adjustments for non-compensable time.

"When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F. 3d 1348, 1350 (11th Cir. 2008) (citing *Loranger*, 10 F.3d at 783). A court may not, however, do both. *See Bivins,* 548 F.3d at 1351-1352 (explaining that "by requiring the district court to conduct either analysis instead of both, we ensure that the district court does not doubly-discount the requested hours"). In deciding between the two options available to the Court, an hour-by-hour approach is sometimes preferable while at other times the "fee documentation can be so voluminous as to render an hour-by-hour review impractical." *Loranger*, 10 F.3d at 783 (holding that where the billing record is voluminous, "the district court need not engage in an hour-by-hour analysis[; r]ather, . . . it may [ ] reduce [the hours devoted to litigation] in gross if a review of the resubmitted fee request warrants

18

such a reduction") (emphasis added).   "In such cases, an across-the-board cut may be appropriate, as long as a court 'articulate[s] [its] reasons for selecting specific percentage reductions.'"   *Roy v. Bd. Of Cty. Comm'rs, Walton Cty., Fla.*, 2012 WL 8013976, at *4 (N.D. Fla. Nov. 1, 2012), *Report and Recommendation adopted*, 2013 WL 1883247 (N.D. Fla. May 6, 2013) (quoting Loranger, 10 F.3d at 783).

An across-the-board reduction is preferable here because, although the Court reviewed the billing records submitted, the records are too voluminous to take an hour-by-hour approach.   And after taking into consideration the errors previously identified in the billing records, we find that the number of attorney hours be reduced by an additional 15% to reflect a more reasonable amount of time spent properly prosecuting this action.   *Cf. Valencia v. Affiliated Grp., Inc.*, 674 F. Supp. 2d 1300, 1311 (S.D. Fla. 2009) (reducing fees by 60% to fairly reflect the time and effort that should have gone into the case from its inception through its conclusion). With this reduction we are left with 214.54 hours of recoverable time at an hourly rate of $400, which yields a net lodestar fee calculation of $85,816.00.

### *(3)*     *The Requested Lodestar Adjustment*

We must now determine whether this final lodestar amount should be enhanced or reduced.   A reduction in fees is warranted if the record shows a demonstrable lack of success for the prevailing party.   *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 1987) (reducing the lodestar by 90% for lack of success, even though plaintiff obtained an admission of liability); *Andrews v. United*

*States*, 122 F.3d 1367, 1376 (11th Cir. 1997) (reducing fees by 88%, even though plaintiffs received approximately $49,000 in damages).

Here, the case for a wholesale reduction in the lodestar is mixed. Although Plaintiff's counsel did not obtain the full extent of success possible, he nevertheless obtained a material result for his client. The amount obtained, $3,318.75, represents almost 86% of the overtime hours he demanded in the statement of claim at the low end of the possible range of damages. The jury awarded Plaintiff most of the hours he requested at that low end range, in the light most favorable to Defendant, calculated on a half-time rate basis. And though Defendant is critical of counsel in not properly understanding that this damage calculation was the *only* possible remedy available in the case, in fairness Plaintiff's counsel identified such a possible outcome in the statement of claim, while leaving open the possibility that Plaintiff could obtain greater damages. In this manner, it is hard to argue that counsel was so greatly aggrandizing the claim to render the ultimate verdict on the overtime issue grossly unreasonable when juxtaposed against the fee request.

On the other hand, the same statement of claim concluded that the high end of the overtime claim could reach $106,000 (based on a possible overtime recovery of $53,000 liquidated). Defendant points out that this disparity evidences the unreasonable manner by which counsel prosecuted the case, and that this wild-eyed demand also explains why the case could not be settled despite two mediations and one settlement conference. Utilizing this excessive demand, even putting aside the separate amount Plaintiff was purportedly owed for the unsuccessful retaliation

claim, the ultimate $6,700 recovery represents just over six percent of what Plaintiff and his inexperienced counsel thought the case was worth.

Moreover, the jury rejected two important aspects of the Plaintiff's case. The jury found in Defendant's favor on the retaliation claim. The jury then found that Defendant's failure to comply with the FLSA was not based on knowing or reckless conduct, thus denying Plaintiff an additional year's worth of damages. Defendant maintains that this limited success does not warrant the type of fee recovery demanded in this case, thus justifying a material reduction in the amount of hours awarded or a substantial adjustment to the lodestar (citing cases to analogous reductions in the neighborhood of 65 to 85 percent).

In analyzing the parties' position in the case, we note that many cases dealing with lodestar reductions share an important characteristic: the plaintiff almost always needlessly persists or prolongs the litigation by making outrageous or grossly unreasonable settlement demands. *See, e.g., Dillard,* 213 F.3d at 1356 ("Thus, in short, the plaintiffs' work had no articulable value, even as part of a war of attrition, after the City accepted the possibility of a fully remedial plan in June 1994."); *Popham v. City of Kennesaw,* 820 F.2d 1570, 1581 (11th Cir. 1987) (67% reduction justified because jury awarded $30,000 damages but plaintiff demanded more than $2 million throughout the course of litigation); *James,* 489 F. Supp. 2d at 1352 ("In this case, in light of the fact that the Plaintiff initially sought to recover over $600,000 and ultimately prevailed on a jury verdict of $1,746.81, plus a liquidated damages award, for a total award of $3,493.62, the Court finds that this

case merits a reduction for limited recovery."). The litigation stances in these cases ultimately caused unnecessary work to be performed, which justified a reduction in the lodestar to account for the unnecessarily litigious strategies of the prevailing party.

As Defendants acknowledge in their response, they never made an offer of judgment to the Plaintiff in this case.  Indeed, our recollection of the settlement conference demonstrated Plaintiff's counsel's willingness to negotiate in good faith while also zealously advocating for the best interests of his client. Defendant was insistent throughout the case that the Plaintiff had no case because he was exempt, thus Defendant's own settlement posture made resolution impossible or extraordinarily difficult.  In this manner the record here presents a stark contrast with others that have penalized extortion-like fee requests with lodestar adjustments. *Cf. Walker v. Iron Sushi LLC*, 752 F. App'x 910, 915 (11th Cir. 2018) ("[I]t is clear that a rejected settlement is an appropriate factor to consider in assessing the reasonableness of a request for attorney fees."); *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003) (denying fee request and admonishing counsel's strategy of "shaking down" defendants "with nightmarishly expensive litigation" and avoidance of "prompt out-of-court resolution" for the sole purpose of larger attorney fee award).

And to further that point, not only did Plaintiff recover a material amount of overtime damages, but also Plaintiff successfully turned back the primary issue raised by Defendants – that Plaintiff was an exempt salaried employee who was not

entitled to any overtime pay. The jury rejected that defense, but only after extensive pretrial litigation was undertaken on that issue as well as a substantial amount of the trial itself. So, Plaintiff may not have achieved everything he asked for, but he certainly achieved enough to negate the argument that this case was all about fees for counsel and nothing else. Clearly both the jury's verdict and the trial Judge's award of liquidated damages on the overtime award support Plaintiff's right to claim a material fee recovery in the case.

After taking all these factors into account, we agree with Defendants that a further lodestar adjustment is required to address the more limited success obtained in the case. But that adjustment need not be as drastic as Defendants suggest because this case stands on far different footing from those cited in Defendants' opposition. Four considerations inform our analysis.

To begin with, there is no doubt that a reasonable fee award is not merely a mechanical calculation based on the amount demanded against the amount received. Such a proportionality calculation would yield, for instance, only a fee award of about $6,400 in this case (given a six percent recovery on the overtime claim from the amount sought before trial to the final award after trial). But Eleventh Circuit caselaw strongly rejects such an approach because statutes like the FLSA cannot be properly enforced by limiting fee awards in this manner. *See P&K Rest. Enter., LLC v. Jackson*, 758 F. App'x 844, 850 (11th Cir. 2019) (rejecting defense theory that $118,894.20 is an excessive fee award for an FLSA case with a $6,308 jury verdict) (citing *James,* 489 F. Supp. 2d at 1347 (S.D. Fla. 2007) ("Fee

awards . . . should not simply be proportionate to the results obtained by the Plaintiff."); *Tyler v. Westway Auto. Serv. Ctr., Inc.*, No. 02-61667-CIV, 2005 WL 6148128, at *5 (S.D. Fla. Mar. 10, 2005) (noting that it is not uncommon for fee requests to exceed the judgment in FLSA cases)).

Second, strict proportionality aside, a trial court should take into account the disparity between the ultimate judgment awarded and the amount of fees incurred. This "fee-to-judgment ratio" was an issue, for instance, in the *P&K* case just as it is here. 758 App'x at 850 ("there is room to quibble with the district court's decision to award a fully compensatory fee here. The fee-to-judgment ratio is large."). And it is also particularly relevant where some of the plaintiff's claims were rejected in the case (like a retaliation claim that the jury rejected). *Id.* (retaliation claim was dismissed at summary judgment).

Third, in adjusting a lodestar one should pay careful attention to whether a successful plaintiff is being penalized twice based on the level of success achieved. In other words, if that level of success was a factor in the reduction of "unnecessary" hours at arriving at the lodestar, then that same factor should not be dispositive in further reducing the lodestar. *See, e.g., Martinez v. Hernando Cnty. Sheriff's Off.*, 579 F. App'x 710, 715 (11th Cir. 2014) (affirming 75% reduction in lodestar based on limited success at trial because district court did not impermissibly "double count" by relying on that same factor in determining the lodestar figure).

And, fourth, the assessment of the level of success must take into account the overall fairness of the outcome and the importance of enforcing federal law. It is

fair, for instance, to acknowledge a limited level of success based on an amount awarded, but that cannot be divorced from the court evaluating the time and effort that the plaintiff was forced to undertake in getting there.  *See, e.g., Rodriguez v. Molina Healthcare Inc.*, 806 F. App'x 797, 805 (11th Cir. 2020) ("Plaintiffs' success should not be measured solely by the size of their recovery. Rather, the district court considered it important and beneficial to the public that the FLSA was successfully enforced") (affirming $488,875 fee award for FLSA plaintiffs that settled shortly before trial for three percent of the original amount claimed in part because defendants did not concede liability until the end of the case).

Applying these factors here, we reject a strict proportionality award as the Eleventh Circuit counsels us.  Instead, a fairer measure of the case is a ten-to-one ratio of fees to damages awarded that yields a fee award of $66,000, which is not too far off from where the lodestar starts.  *See Martinez,* 579 F. App'x at 715 (affirming lodestar adjustment that netted FLSA plaintiff a ten-to-one ratio of fees to damages award).  The Court has taken into account the unsuccessful retaliation claim by excising time entries focused on that claim from the lodestar calculation.  Thus it is unfair to double-dip by relying on the failed retaliation claim in the lodestar adjustment process.  And the Court's judgment is informed by its review of the whole record that shows that time and effort had to be undertaken to defeat Defendants' principal defense to the overtime claim – that Plaintiff was exempt in the first place.  Having successfully overcome that defense, the jury's award represents one measure of damages that Plaintiff claimed from the start of the case.

So there can be no surprise to Defendants if a material fee award follows based on the outcome of the trial.  At the same time, however, it can also be fairly concluded that Plaintiff's higher-end damages claim made it more difficult to settle the case at an earlier more efficient time.  So that should also be considered in arriving at a final lodestar adjustment.

Having considered all these factors, the Court finds that the lodestar should be adjusted in the case, but only by an additional 30% reduction.  Given the lodestar calculation of $85,816.00, such a reduction in the lodestar yields a final amount of $60,071.20.  That amount represents the fairest fee award that the record supports.

### III.  CONCLUSION

Plaintiff's motion for taxable costs is **GRANTED in part** and **DENIED in part** and Plaintiff is awarded a total cost recovery of $10,025.11.

Plaintiff's motion for attorneys' fees is **GRANTED in part** and **DENIED in part** and Plaintiff is entitled to a total fee award of $60,071.20.[6]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of March, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge

---

[6] The motions are adjudicated by Order for administrative purposes.  The parties retain the right to appeal any aspect of this Order under Rule 4(a) *and* may also seek *de novo* review for that purpose. Failure to file an appeal with the District Judge precludes the filing of any appeal to the Court of Appeals and will operate as the parties' consent to entry of judgment on this Order.